THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
2039 Shattuck Avenue, Suite 308
Berkeley, California 94704
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com

Attorneys for Individual and Representative
Plaintiffs Richard Fontenberry, Hunter
Blaine, and Keith Ward and all Opt-In Consent Plaintiffs

JULIE A. DUNNE, ESQ., SBN 160544
DAWN S. FONSECA, ESQ., SBN 259405
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
Facsimile: 619.232.4302

Attorneys for Defendant MV Transportation

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD FONTENBERRY, HUNTER BLAINE, and KEITH WARD, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MV TRANSPORTATION, INC.; and DOES 1-20, <br><br> Defendants. | Civil Case Number: 2:12-cv-01996-TLN-JFM <br><br> **JOINT MOTION FOR SETTLEMENT APPROVAL** <br><br> Date: May 8, 2014 <br> Time: 2:00 P.M. <br> Courtroom: 2 (15th Floor) <br><br> The Honorable Troy L. Nunley |

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN that on May 8, 2014, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the Eastern District of California, Sacramento Division, located on the 15th Floor at 501 "I" Street, Sacramento, California, the parties will and hereby do jointly move this Court for entry of the Proposed Order submitted herewith approving settlement of all claims against MV Transportation by the named plaintiffs and all individuals who consented to opt into this action, including claims under the Fair Labor Standards Act, the California Labor Code, and California Business and Professions Code, and granting dismissal of the claims with prejudice.  In support of this Motion, the parties submit the accompanying Memorandum of Points and Authorities, the Declaration of Steven G. Tidrick, Esq. ("Tidrick Decl."), and the Proposed Order, filed concurrently herewith.  Counsel for both parties have met and conferred prior to the filing of this motion.

Respectfully submitted,

DATED:  March 19, 2014            THE TIDRICK LAW FIRM

By:   /s/ Steven G. Tidrick
STEVEN G. TIDRICK, ESQ.

Attorneys for Individual and Representative Plaintiffs Richard Fontenberry, Hunter Blaine and Keith Ward

DATED:  March 19, 2014            LITTLER MENDELSON

By:   /s/ Dawn Fonseca
DAWN FONSECA, ESQ.

Attorneys for Defendant MV Transportation

---

1

JOINT MOTION FOR SETTLEMENT APPROVAL

Firmwide:125634532.3 072247.1003

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Named plaintiffs, Richard Fontenberry, Hunter Blaine, and Keith Ward, and 150 additional individuals who consented to opt into this action pursuant to 29 U.S.C. § 216(b) (collectively, the "Plaintiffs"),[1] together with Defendant MV Transportation, Inc. ("Defendant") respectfully move the Court to approve individual settlements of this case, which was brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the California Labor Code and the California Business and Professions Code, and to dismiss this action with prejudice in its entirety.

As context, this case was filed as a putative class and collective action lawsuit asserting wage and hour claims under the FLSA and California law.  However, at the time this case was filed, identical causes of action had already pending for several years in California state court in the matters of *Arce v. MV Transportation, Inc.*, *Rodriguez v. MV Transportation, Inc.*, and *Domingues v. MV Transportation, Inc.*, Los Angeles County Superior Court, Central District Case Nos. BC457702, BC479612, BC478832, BC440717.  Those cases were settled and the settlements were finally approved of by the Los Angeles Superior Court on September 27, 2013.  Consequently, it was Defendant's position that the claims at issue in this litigation were resolved in the Los Angeles actions with respect to all putative class members in California, with the exception of class members who opted out of those settlements and who in large part also comprised the California opt-in plaintiffs in this action.  Given the California settlements and following extensive discovery and litigation of the matter, the parties have negotiated and entered into individual settlement agreements whereby all Plaintiffs' claims are settled and released.  The parties now seek the Court's approval of the individual settlements as required by the FLSA.  As set forth below, the Court should approve the parties' settlements as a reasonable compromise of a bona fide dispute of the FLSA claims.

---

[1] The names of the Plaintiffs for whom Court approval of settlements is requested are listed in Exhibit A to the Declaration of Steven G. Tidrick, Esq.

## II.     BACKGROUND

### A. Relevant Procedural History

The named plaintiffs filed their original complaint in this action on July 30, 2012 and a first amended complaint on August 17, 2012. Docket Nos. 1, 6. Following a contested motion for leave to amend, which the Court granted, the Second Amended Complaint ("SAC") was filed on April 1, 2013 asserting various collective and class action claims under the FLSA, California Labor Code, and the California Business and Professions Code. Docket Nos. 20, 28-30. The claims were based on named plaintiffs' assertion that Defendant had engaged in an unlawful pattern and practice of failing to pay its operators for all compensable work performed by its employees, including minimum wage and overtime pay, and failing to meet the requirements of California law and Industrial Welfare Commission ("IWC") Order No. 9-2001 ("Wage Order No. 9"), inluding failing to provide meal periods and rest breaks. Defendant denied the allegations and asserted forty-six (46) affirmative defenses. Docket Nos. 8, 66. Among others, those affirmative defenses included state and federal motor vehicle exemptions to overtime, state exemptions to overtime and meal period requirements based on collective bargaining agreements, as well as the defense that no hours were worked within the meaning of applicable law and that any alleged unpaid time would be *de minimis*. *Id.*

Throughout the litigation, the parties conducted significant formal and informal discovery. Specifically, named plaintiffs propounded two sets of requests for production, in response to which Defendant produced over 1500 pages of documents. Defendant likewise propounded three sets of requests for production and three sets of special interrogatories. *See* Tidrick Decl. ¶ 2. Additionally, counsel for named plaintiffs conducted their own investigation, including numerous interviews with opt-in plaintiffs. *See id.*

Based on their investigation, on July 22, 2013, counsel for named plaintiffs filed a Motion for Approval of *Hoffman-La Roche* Notice, which attached declarations of thirteen (13) operators currently or formerly employed by Defendant. *Id.* ¶ 3; Docket No. 51. Concurrently with the filing of the present motion, Plaintiffs' counsel are filing a Notice of Withdrawal of Motion for

Approval of *Hoffman-La Roche* Notice without prejudice so that it would be taken off calendar pending the Court's approval of the individual settlement agreements. *See* Tidrick Decl. ¶ 3.

### B. The Settlement

After Plaintiffs filed their *Hoffman-La Roche* Motion, the parties mutually agreed to discuss settlement and thereafter engaged in extensive settlement discussions in an effort to resolve the case. *See* Tidrick Decl. ¶ 4. Those settlement efforts included one in-person session at Defendant's counsel's offices lasting several hours and numerous additional discussions by telephone. *Id.* In order to ensure the parties had sufficient information on which to base a settlement, Defendant also turned over an additional 1,400 pages of documents, including driver schedules, policies and procedures, collective bargaining agreements, etc. *See* Tidrick Decl. ¶ 4. Based on their extensive discussions and investigation into the claims at issue, the parties reached a settlement of all of the Plaintiffs' claims against MV Transportation.[2] *See* Tidrick Decl. ¶ 4.

More specifically, subject to the Court's approval, the terms of the parties' settlement was memorialized in a Memorandum of Understanding dated December 26, 2013, which ultimately resolved Plaintiffs' claims for a collective total of $170,227.93.[3] *See* Tidrick Decl. ¶ 5. Under the Memorandum of Understanding, counsel for Plaintiffs negotiated individual settlements for the three named plaintiffs and 150 additional opt-in consent plaintiffs, inclusive of attorneys' fees and costs, with each settlement amount individually calculated based upon the specific claims alleged by the individual Plaintiff and the amount of weeks worked.[4] *Id.* Thus,

---

[2] There are two exceptions. Specifically, one opt-in plaintiff, Mr. Ricardo Casino, was determined by the parties to have never been employed by MV Transportation and has not been in contact with Plaintiffs' counsel since signing the initial opt-in on July 9, 2013, despite counsel's best efforts to reach him. The parties have thus agreed to dismiss his claims without prejudice. Additionally, one other opt-in plaintiff, Mr. Hessman Tall, has requested dismissal of his claims in *Fontenberry* without prejudice to pursue his own action in the District of Maryland, which alleges identical claims. *See* Tidrick Decl. ¶ 4.

[3] Although the Memorandum of Understanding initially contemplated settling the claims of all Plaintiffs for a total of $159,700, Plaintiffs' counsel negotiated additional consideration for opt-in consent plaintiffs who sent counsel their written consents after settlement negotiations were finalized, for an additional amount of $11,277.93 for 8 individuals. Additionally, as noted above, one individual, Mr. Hessman Tall, has requested dismissal of his claims to pursue his own action. Consequently, the total settlement amount in the MOU was subsequently reduced by Mr. Tall's previously anticipated individual settlement amount. *See* Tidrick Decl. ¶ 4.

[4] Named plaintiffs did not receive any incentive award or additional consideration by virtue of their being a putative class representative. *See* Tidrick Decl. ¶ 7.

each individual settlement agreement requires the payment of an individually negotiated settlement amount, which is divided into a portion representing alleged unpaid wages subject to any required FICA, federal and state employment taxes and any other legally required deductions and a portion representing attorneys' fees and costs.[5]  *Id.*  Under the Memorandum of Understanding, Defendant will deliver the settlement proceeds to Plaintiffs' counsel for distribution within twenty (20) calendar days after the date on which the Court approves the individual settlement agreements and dismisses this action in its entirety with prejudice.  *Id.*

Concurrently with the filing of this motion, the Memorandum of Understanding and true and correct copies of each of the 153 individual settlement agreements executed by Plaintiffs have been lodged under seal with the Court, along with a request to seal such documents, pursuant to Local Rule 141.  *See e.g. Trinh v. JPMorgan Chase & Co.*, No. 07–CV–01666 W(WMC), 2009 WL 532556, at *3-4 (S.D. Cal. 2009) (reviewing individual settlement agreements under the FLSA *in camera*).

Plaintiffs' counsel has spoken with each named plaintiff regarding the terms of the settlement and have made themselves available to answer any questions from opt-in plaintiffs. *See* Tidrick Decl. ¶ 10.  Indeed, Plaintiffs' counsel in fact communicated with numerous individual opt-in plaintiffs in the process of negotiating the terms of the settlement and to ensure opt-in plaintiffs understood the final terms before signing and approving the individual settlement agreements.  *Id.*  Thus, it is only with the advice of counsel that Plaintiffs have executed 153 individual settlement agreements.  *Id.*

**C. Damages Analysis**

For purposes of settlement, Plaintiffs' counsel analyzed damages in this case using averages of named plaintiffs' actual salary amounts during the relevant time period and an estimate of the number of overtime hours they worked based on the number of work days within the covered period.  *See* Tidrick Decl. ¶ 11.  If Plaintiffs were to prevail on liability at trial, then

---

[5] There are a total of 8 exceptions, where the individual settlement agreements do not include an amount for attorneys' fees.  In those 8 instances, the full settlement amount represents alleged unpaid wages.  *See* Tidrick Decl. ¶¶ 5, 6.

5
**JOINT MOTION FOR SETTLEMENT APPROVAL**

the amount of damages awarded could fall within a wide range, based on the number of overtime hours at issue, the statute of limitations and the potential liquidated damages. *See* Tidrick Decl. ¶ 12. For example, if Defendant: (1) convinced the finder of fact that Plaintiffs did not work overtime or were not entitled to statutory overtime because they were subject to overtime exemptions under the federal motor vehicle exemption; (2) eliminated the third year of the statute of limitations by establishing any violation was not willful; and (3) avoided liquidated damages, the total damages for the Plaintiffs here would be much smaller than the agreed upon settlement amount. *See* Tidrick Decl. ¶ 12. To the contrary, if Plaintiffs convinced the finder of fact that they were entitled to many hours per week of overtime pay, were successful in obtaining a three year statute of limitations and obtained liquidated damages, the total damages for the Plaintiffs here would be much higher than the agreed upon settlement amount. *See* Tidrick Decl. ¶ 12. In theory, then, even if Plaintiffs prevailed on liability, the potential damages in this case could range over a span of hundreds of thousands of dollars. *Id.* All of these damage estimates assume, of course, that Plaintiffs prevail on liability, which Defendant contests. A verdict for Defendant would, of course, mean zero recovery for Plaintiffs. *Id.*

Because the variables in an FLSA damage analysis cause the numbers to vary so widely, as shown above, it is often difficult to pinpoint a realistic "potential recovery" in an FLSA case such as this one. At $170,227.93 overall, the proposed settlement is clearly substantial. *See* Tidrick Decl. ¶ 13. Indeed, the individual settlement agreements (***excluding*** any amounts allocated for attorneys' fees and costs) provide for a minimum recovery of $55.87 (for an individual who worked only 9 weeks), a maximum recovery of $6,358.94 (for an individual who worked the majority of the limitations period) and an average recovery of $713.73. *See* Tidrick Decl. ¶ 13. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, class members are eligible for significant financial benefit. These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed; and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings. Indeed, for example, Defendant maintains that a nationwide (or California)[6] class or collective action cannot be certified because putative class members are employed in separately operated divisions that each have different policies, procedures and collective bargaining agreements at issue and because putative class members' routes and schedules differed substantially based on a number of factors, including location, management, and client requirements. *See e.g. Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759 (N.D. Ill. 2004) (denying certification where: "[C]laimants are similar to the named plaintiffs and each other to the extent that they are all school-bus drivers, but beyond this similarity they are quite different. The opt-in claimants work in thirty-eight different terminals, which are each operated by different local, autonomous managers and under different collective bargaining agreements.").

In addition, for purposes of evaluating the fairness of the individual settlements, it is highly relevant that the California Plaintiffs (representing 47% of the Plaintiffs as a whole) were eligible to participate in the class action settlements that were approved of and finally adjudged as fair by the Superior Court of California, County of Los Angeles, in the matters of *Arce v. MV Transportation, Inc.*, *Rodriguez v. MV Transportation, Inc.*, and *Domingues v. MV Transportation, Inc.*, Los Angeles County Superior Court, Central District Case Nos. BC457702, BC479612, BC478832, BC440717, but instead chose to opt out of those settlements to pursue their own claims in this action on the advice of counsel. *See* Tidrick Decl. ¶ 14. Indeed, the Los Angeles actions alleged identical causes of action as those alleged in this action, including failure to pay overtime and minimum wages under the FLSA and California law and failure to provide meal periods and rest breaks, along with derivative claims. However, California Plaintiffs here are recovering, on average, an amount 6 times the amount that they would have

---

[6] Indeed, Defendant asserted that the Los Angeles settlements alone precluded certification of a class of California employees due to the doctrine of res judicata, among other reasons.

7

**JOINT MOTION FOR SETTLEMENT APPROVAL**

Firmwide:125634532.3 072247.1003

received if they had participated in the Los Angeles class action settlements. *See* Tidrick Decl. ¶ 14.

## III.   ARGUMENT

### A. Standard for Approval of Settlement of FLSA Action

Because FLSA rights generally cannot be waived, settlement of actions for back wages pursuant to 29 U.S.C. § 216(b) must be approved by a court. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  The decision of whether to approve an FLSA settlement lies within the court's discretion. *See id.* at 1350.  In order to approve a settlement proposed by an employer and employees, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355; *Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. 2011) (approving individual settlements in FLSA collective action, where "payments are the result of arms-length negotiations between Hershey and the 120 plaintiffs who are represented by counsel, and who have all expressly consented to the settlement"); *Lee v. Timberland Co.*, No. C 07-2367 JF, 2008 WL 2492295, at *2 (N.D. Cal. 2008) (approving individual settlements in FLSA collective action where there were significant questions as to "the classification of employees as exempt under the FLSA as well as the appropriateness of collective action" and concerns regarding the "relative difficulty of proving precisely how many overtime hours actually were worked"); *Yhe Zhou v. Wang's Rest.*, No. C 05-0279 PVT, 2007 WL 172308, at *2 (N.D. Cal. 2007) (approving individual settlement of FLSA claims, because there was a bona fide dispute at issue, including whether the plaintiff was exempt from overtime); *Trinh v. JPMorgan Chase & Co.*, No. 07–CV–01666 W(WMC), 2009 WL 532556, at *3-4 (S.D. Cal. 2009) (approving individual settlements of FLSA collective action, based on "the risk, expense, complexity, and likely duration of further litigation, the extent of the discovery completed, the stage of proceeding, and the experience and views of counsel").  Thus, if a settlement in an employee FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the Court may approve the settlement "in order to promote

the policy of encouraging settlement of litigation." *Lynn's Food Stores,* 679 F. 2d at 1354; *Yue Zhou,* 2007 WL 172308, at *2. Court approval of FLSA settlements helps ensure that the resolution is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores,* 679 F. 2d at 1354. Settlements of court actions are permissible because "initiation of the action by the employees provides some assurance of an adversarial context." *Id.*

### B. This Litigation Presented a Bona Fide Dispute Regarding Wages

With respect to FLSA coverage and potential liability, Plaintiffs contend that Defendant's operators are entitled to straight time and any applicable overtime for: (1) non-commute travel time between disparate start and end points of operators' scheduled runs, (2) split-shift travel time, (3) pre/post-trip inspection time, (4) time spent attending mandatory meetings; (5) time spent waiting between shifts, (6) the differential between scheduled run time and the actual run times, and (7) time spent submitting claims. In response, Defendant denies Plaintiffs' substantive allegations and denies that this action should proceed as a class/collective action.

As just one example, Plaintiffs' travel time claims represent a bona fide dispute regarding whether additional wages are owed for such time and whether such a claim could even be certified for collective treatment. Although Plaintiffs contend that Defendant did not pay for travel time where drivers' shifts or split shifts began or ended at disparate relief locations, Defendant claims that all such travel time was built into Plaintiffs' schedules and paid accordingly. To the extent actual travel time exceeded anticipated travel time, Defendant claims Plaintiffs should have and did in fact record the additional time pursuant to established mechanisms for accurately recording all hours worked. Moreover, Defendant contends many drivers do not even have travel time, because their routes and/or schedules always start and end from a single established location. And if some drivers did have travel time that was not recorded as required by Defendant's policies, Defendant claims the amount of such time differed dramatically depending on traffic conditions, division geography, the route at issue and management, client and union requirements, all of which fluctuated from division to division and would undermine collective action treatment. *See e.g. Douglas v. First Student, Inc.*, 888 F.

Supp. 2d 929 (E. D. Ark. 2012) (denying FLSA collective certification where the need to prove a threshold number of hours worked off-the-clock would require individualized inquiry because "accurate records of the length of the routes do not exist, and because the drivers concede that one driver cannot testify as to how long another driver's route took to complete, this inquiry will necessarily require individualized testimony from each driver. . ."). Defendant also argues that even if the amount of alleged unpaid travel time could be ascertained, it would equal at most a few minutes on isolated occasions when traffic or other unique circumstances caused a delay, which would be *de minimis* and therefore disregarded under federal law. *See e.g. Lindow v. United States,* 738 F.2d 1057, 1062 (9th Cir. 1984). Finally, Defendant claims that its drivers may also be exempt from overtime under the FLSA due to the federal motor vehicle exemption. Each of Plaintiffs' theories for alleged unpaid wages present similar bona fide disputes regarding whether such time is owed under the FLSA.

In addition to the above issues, there are numerous other important and contested issues that would need to be determined in the event litigation should proceed and that further evidence a bona fide dispute as to the amount of wages due. With respect to Plaintiffs' FLSA claims, these include the availability of liquidated damages and a three-year statute of limitations (as opposed to a two year statute for non-willful violations under 29 U.S.C. § 255(a)), as well as the amount of overtime hours Plaintiffs actually worked.

Thus, the settlement is not "a mere waiver of statutory rights brought by an employer's overreaching." *Lynn's Food Stores,* 679 F. 2d at 1354. This case presents bona fide disputes over many issues pertaining to employees' rights to overtime pay. Accordingly, approval of the above-described compromise of Plaintiffs' claims is appropriate.

### C. This Settlement Is a Reasonable Compromise of Disputed Issues

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F. 2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]limately the amount of the [settlement payments] will be less than what some

class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id.*

Here, the Court should approve the individual settlements because the payments to Plaintiffs are substantial and they represent a reasonable compromise of Plaintiffs' FLSA claims. Indeed, the Los Angeles Superior Court expressly approved of an FLSA settlement on behalf of a California class, which covered identical causes of action for a three year period, for individual settlement amounts far less than presented for approval here. While Plaintiffs' counsel believes that Plaintiffs' claims are meritorious, they are experienced class action litigators and understand that the outcome of class/collective certification, trial, and any attendant appeals are inherently uncertain. *See* Tidrick Decl. ¶ 15. Having reviewed thousands of pages of documents and extensively briefed the pivotal legal and factual issues, counsel for the parties have thus arrived at a reasonable resolution through a protracted and arm's-length negotiation process, which continued into all details of the settlement agreement and ancillary documents. *Id.*

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625. Indeed, courts must weigh the benefits of the proposed individual settlements against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431, 433-34 (5th Cir. 1971). This factor, which favors settlement of class actions and other complex cases, applies with particular force here. Employment cases, and specifically wage and hour cases, are expensive and time-consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the individual settlements at issue. Inevitably, the certification process alone would add time and expense to the litigation process. The individual settlements, on the other hand, provide all Plaintiffs with substantial relief, promptly and efficiently. The individual settlements in this case are therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst* v. *Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (citing cases).

The resulting individual settlements are, in light of all applicable factors, fair and reasonable, and should be approved by this Court.

### D. A General Release is Appropriate Given the Circumstances and Amounts Offered in the Settlement.

"The weight of authority establishes that . . . a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint. . . . And it has been held that even when the court does not have power to adjudicate a claim, it may still 'approve release of that claim as a condition of settlement of [an] action [before it].'" *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 586 (2010), citing *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 221 (5th Cir. 1981).

Here, each of the individual settlement agreements includes a general release, as applicable to each individual Plaintiff. *See* Tidrick Decl. ¶ 16. More specifically, the settlement agreements provide that, in exchange for receipt of the settlement payment from Defendant, each individual Plaintiff will release all claims, known or unknown, against Defendant, which include California Civil Code section 1542 waivers, through the date of execution of the individual settlement agreements. The release, therefore, does not preclude any Plaintiff from pursuing future actions should they arise. Plaintiffs and Defendant sought and agreed to a general release only after extended individualized negotiations on behalf of the Plaintiffs in order to provide a global and final resolution between the parties, and, from Plaintiffs' perspective, to increase the amounts offered in settlement. *See* Tidrick Decl. ¶ 16. Considering the circumstances, a general release is reasonable.

### E. Plaintiffs' Counsel's Fees and Costs Are Reasonable

The Court should also approve Plaintiffs' counsel's fees and costs in the amount of $49,750, or roughly 29% of the total settlement. The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Further, the request is in line with other attorneys' fees awards in California for wage and

hour class actions, particularly where a significant portion of the class members will be receiving substantial payment amounts of several thousand dollars.

The Ninth Circuit has recognized that an appropriate method for awarding attorneys' fees in a class action is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.* Accordingly, under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method. (*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994).

Several courts have, however, expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?"  Under a cost-benefit analysis, the answer would be a resounding, "No!"  Not only do the Lindy Kerr-Johnson analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members.  They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition.  Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund.  Most important, however, is the effect the process has on the litigation and the timing of settlement.  Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement."

*Id.*

The percentage approach is preferable to the lodestar because:  (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. The Ninth Circuit now routinely uses the percentage of the common fund approach to determine the award of attorneys' fees. *See, e.g.*, *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

Plaintiffs' counsel's application for 29% of the Settlement Funds is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *See* NEWBERG ON CLASS ACTIONS § 14:6 (4th ed. 2008). *See also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented. NEWBERG, § 14:6. Accordingly, the attorneys' fees sought in this case are fair and reasonable.

## IV. CONCLUSION

This settlement is a product of arms-length negotiations between counsel and on behalf of individually represented Plaintiffs that has resolved a bona fide dispute over wages. The settlements provide all Plaintiffs with substantial monetary relief that clearly represents a compromise of the parties' dispute. For these reasons and those set forth above, the Court should approve the parties' settlement and the Plaintiffs' releases and dismiss this action, with prejudice, consistent with the Proposed Order submitted herewith.

Respectfully submitted,

DATED: March 19, 2014                THE TIDRICK LAW FIRM

By:   /s/ Steven G. Tidrick
STEVEN G. TIDRICK, ESQ.
Attorneys for Individual and Representative Plaintiffs Richard Fontenberry, Hunter Blaine and Keith Ward

DATED: March 19, 2014                LITTLER MENDELSON

By:   /s/ Dawn Fonseca
DAWN FONSECA, ESQ.
Attorneys for Defendant MV Transportation

14

JOINT MOTION FOR SETTLEMENT APPROVAL