THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
2039 Shattuck Avenue, Suite 308
Berkeley, California  94704
Telephone:  (510) 788-5100
Facsimile:   (510) 291-3226
E-mail:       sgt@tidricklaw.com

Attorneys for Individual and Representative
Plaintiffs Richard Fontenberry, Hunter
Blaine, and Keith Ward

JULIE A. DUNNE, ESQ., SBN 160544
DAWN S. FONSECA, ESQ., SBN 259405
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
Facsimile: 619.232.4302

Attorneys for Defendant MV Transportation

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD FONTENBERRY, HUNTER BLAINE, and KEITH WARD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MV TRANSPORTATION, INC.; and DOES 1-20,<br><br>Defendants. | Civil Case Number:  2:12-cv-01996-TLN-JFM<br><br>**DECLARATION OF STEVEN G. TIDRICK, ESQ. IN SUPPORT OF THE PARTIES' JOINT MOTION FOR SETTLEMENT APPROVAL**<br><br>Date:        May 8, 2014<br>Time:       2:00 P.M.<br>Courtroom: 2 (15th Floor)<br><br>The Honorable Troy L. Nunley |

I, Steven G. Tidrick, do declare and state as follows:

1. I am an attorney with The Tidrick Law Firm, attorneys of record for Plaintiff in the above-entitled action. I am licensed to practice before all of the courts of the States of California and Massachusetts and several federal district courts, including the Eastern District of California. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2. Throughout this litigation, the parties conducted significant formal and informal discovery. Specifically, our firm, on behalf of the named plaintiffs, propounded two sets of requests for production, in response to which Defendant produced over 1500 pages of documents. Defendant likewise propounded three sets of requests for production and three sets of special interrogatories. Additionally, on behalf of named plaintiffs, our firm conducted its own investigation, including numerous interviews with opt-in plaintiffs.

3. Based on our firm's investigation, on July 22, 2013, Plaintiffs filed a Motion for Approval of *Hoffman-La Roche* Notice, which attached declarations of thirteen (13) operators currently or formerly employed by Defendant. (Docket No. 51.) Concurrently with the filing of the present motion, Plaintiffs are filing a Notice of Withdrawal of Motion for Approval of *Hoffman-La Roche* Notice without prejudice so that it would be taken off calendar pending the Court's approval of the individual settlement agreements.

4. After Plaintiffs filed the *Hoffman-La Roche* Motion, the parties mutually agreed to discuss settlement and thereafter engaged in extensive settlement discussions in an effort to resolve the case. Those settlement efforts included one in-person session at Defendant's counsel's offices lasting several hours and numerous additional discussions by telephone. In order to ensure the parties had sufficient information on which to base a settlement, Defendant also turned over an additional 1,400 pages of documents, including driver schedules, policies and procedures, collective bargaining agreements, etc. Based on our extensive discussions and investigation into the claims at issue, the parties reached a settlement of all of the Plaintiffs' claims against MV Transportation. Attached hereto as **EXHIBIT A** is a list of the names of the Plaintiffs for whom Court approval of settlements is requested. There are two exceptions.

Specifically, one opt-in plaintiff, Mr. Ricardo Casino, was determined by the parties to have never been employed by MV Transportation and has not been in contact with Plaintiffs' counsel since signing the initial opt-in on July 9, 2013, despite counsel's best efforts to reach him. The parties have thus agreed to dismiss his claims without prejudice. Additionally, one other opt-in plaintiff, Mr. Hessman Tall, has requested dismissal of his claims in *Fontenberry* without prejudice to pursue his own action in the District of Maryland, which alleges identical claims.

5.  More specifically, subject to the Court's approval, the terms of the parties' settlement was memorialized in a Memorandum of Understanding dated December 26, 2013, which ultimately resolved Plaintiffs' claims for a collective total of $170,227.93. Although the Memorandum of Understanding initially contemplated settling the claims of all Plaintiffs for a total of $159,700, Plaintiffs' counsel negotiated additional consideration for opt-in consent plaintiffs who sent counsel their written consents after settlement negotiations were finalized, for an additional amount of $11,277.93 for 8 individuals. In those 8 instances, the individual settlement agreements do not include an amount for attorneys' fees. Additionally, as noted above, one individual, Mr. Hessman Tall, has requested dismissal of his claims to pursue his own action. Consequently, the total settlement amount in the MOU was subsequently reduced by Mr. Tall's previously anticipated individual settlement amount.

6.  Under the Memorandum of Understanding, our firm, on behalf of Plaintiffs, negotiated individual settlements for the three named plaintiffs and 150 additional opt-in consent plaintiffs, inclusive of attorneys' fees and costs, with each settlement amount individually calculated based upon the specific claims alleged by the individual Plaintiff and the amount of weeks worked. Thus, each individual settlement agreement requires the payment of an individually negotiated settlement amount, which is divided into a portion representing alleged unpaid wages subject to any required FICA, federal and state employment taxes and any other legally required deductions and a portion representing attorneys' fees and costs. There are a total of 8 exceptions, where, as noted above, the individual settlement agreements do not include an amount for attorneys' fees. In those 8 instances, the full settlement amount represents alleged unpaid wages.

7. Named plaintiffs did not receive any incentive award or additional consideration by virtue of their being a putative class representative.

8. Under the Memorandum of Understanding, Defendant will deliver the settlement proceeds to Plaintiffs' counsel for distribution within twenty (20) calendar days after the date on which the Court approves the individual settlement agreements and dismisses this action in its entirety with prejudice. *Id.*

9. Concurrently with the filing of this motion, the Memorandum of Understanding and true and correct copies of each of the 153 individual settlement agreements executed by Plaintiffs have been lodged under seal with the Court, along with a request to seal such documents, pursuant to Local Rule 141.

10. Plaintiffs' counsel has spoken with each named plaintiff regarding the terms of the settlement and have made ourselves available to answer any questions from opt-in plaintiffs. Indeed, our firm in fact communicated with numerous individual opt-in plaintiffs in the process of negotiating the terms of the settlement and to ensure opt-in plaintiffs understood the final terms before signing and approving the individual settlement agreements. Thus, it is only with the advice of counsel that Plaintiffs have executed 153 individual settlement agreements.

11. For purposes of settlement, our firm analyzed damages in this case using averages of named plaintiffs' actual salary amounts during the relevant time period and an estimate of the number of overtime hours they worked based on the number of work days within the covered period.

12. If Plaintiffs were to prevail on liability at trial, then the amount of damages awarded could fall within a wide range, based on the number of overtime hours at issue, the statute of limitations and the potential liquidated damages. For example, if Defendant: (1) convinced the finder of fact that Plaintiffs did not work overtime or were not entitled to statutory overtime because they were subject to overtime exemptions under the federal motor vehicle exemption; (2) eliminated the third year of the statute of limitations by establishing any violation was not willful; and (3) avoided liquidated damages, the total damages for the Plaintiffs here would be much smaller than the agreed upon settlement amount. To the contrary, if

Plaintiffs convinced the finder of fact that they were entitled to many hours per week of overtime pay, were successful in obtaining a three year statute of limitations and obtained liquidated damages, the total damages for the Plaintiffs here would be much higher than the agreed upon settlement amount.  In theory, then, even if Plaintiffs prevailed on liability, the potential damages in this case could range over a span of hundreds of thousands of dollars.  All of these damage estimates assume, of course, that Plaintiffs prevail on liability, which Defendant contests.  A verdict for Defendant would, of course, mean zero recovery for Plaintiffs.

13. Because the variables in an FLSA damage analysis cause the numbers to vary so widely, as shown above, it is often difficult to pinpoint a realistic "potential recovery" in an FLSA case such as this one.  At $170,227.93 overall, the proposed settlement is clearly substantial.  Indeed, the individual settlement agreements (*excluding* any amounts allocated for attorneys' fees and costs) provide for a minimum recovery of $55.87 (for an individual who worked only 9 weeks), a maximum recovery of $6,358.94 (for an individual who worked the majority of the limitations period) and an average recovery of $713.73.  This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands.  Instead, class members are eligible for significant financial benefit.  These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.  This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed; and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings.  Indeed, for example, Defendant maintains that a nationwide (or California) class or collective action cannot be certified because putative class members are employed in separately operated divisions that each have different policies, procedures and collective bargaining agreements at issue and because putative class members' routes and schedules differed substantially based on a number of factors, including location, management, and client requirements.  *See e.g. Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759 (N.D. Ill. 2004) (denying certification where: "[C]laimants are similar to the named plaintiffs and each other to the extent that they are all school-bus drivers, but beyond this similarity they are quite different.

The opt-in claimants work in thirty-eight different terminals, which are each operated by different local, autonomous managers and under different collective bargaining agreements.").

14. In addition, for purposes of evaluating the fairness of the individual settlements, it is highly relevant that the California Plaintiffs (representing 47% of the Plaintiffs as a whole) were eligible to participate in the class action settlements that were approved of and finally adjudged as fair by the Superior Court of California, County of Los Angeles, in the matters of *Arce v. MV Transportation, Inc.*, *Rodriguez v. MV Transportation, Inc.*, and *Domingues v. MV Transportation, Inc.*, Los Angeles County Superior Court, Central District Case Nos. BC457702, BC479612, BC478832, BC440717, but instead chose to opt out of those settlements to pursue their own claims in this action on the advice of counsel. Indeed, the Los Angeles actions alleged identical causes of action as those alleged in this action, including failure to pay overtime and minimum wages under the FLSA and California law and failure to provide meal periods and rest breaks, along with derivative claims. However, the California Plaintiffs here are recovering, on average, an amount six (6) times the amount that they would have received if they had participated in the Los Angeles class action settlements.

15. While our firm believes that Plaintiffs' claims are meritorious, we are experienced class action litigators and understand that the outcome of class/collective certification, trial, and any attendant appeals are inherently uncertain. Attached hereto as **EXHIBIT B** is a true and correct copy of the firm resume for The Tidrick Law Firm. Having reviewed thousands of pages of documents and extensively briefed the pivotal legal and factual issues, counsel for the parties have thus arrived at a reasonable resolution through a protracted and arm's-length negotiation process, which continued into all details of the settlement agreement and ancillary documents.

16. Here, each of the individual settlement agreements includes a general release, as applicable to each individual Plaintiff. More specifically, the settlement agreements provide that, in exchange for receipt of the settlement payment from Defendant, each individual Plaintiff will release all claims, known or unknown, against Defendant, which include California Civil Code section 1542 waivers, through the date of execution of the individual settlement agreements. The release, therefore, does not preclude any Plaintiff from pursuing future actions

should they arise.  Plaintiffs and Defendant sought and agreed to a general release only after extended individualized negotiations on behalf of the Plaintiffs in order to provide a global and final resolution between the parties, and, from Plaintiffs' perspective, to increase the amounts offered in settlement.  Considering the circumstances, a general release is reasonable.

17.     Based on my experience, and taking into consideration the risks of continued litigation, including appeals, versus the certain and substantial relief afforded by the individual settlements, it is my professional opinion that the settlements are fair, adequate, and reasonable, and merit approval by this Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 19, 2014.

/s/ Steven G. Tidrick

_____
STEVEN G. TIDRICK, ESQ.

# Exhibit A

| | |
|---|---|
| DAVID | TOWNSEND |
| KENNETH | WILLIAMS |
| NATALYA | LOWTHER |
| WILLIE "DEAN" | STREET |
| DANIEL | MORELAN |
| SONIA | PORTILLO |
| CECILIA R. | PIPPEN |
| JACOB | REYES III |
| KERMIT | ALEXANDER |
| ARLENE M. | BENAVIDES |
| KIMBERLY E. | BUIRST |
| JONATHAN | EVANS |
| VERONICA | FRANK |
| JOHNNIE | GARRETT |
| BUFORD | HARRISON |
| KENNETH | HENRY |
| RODRIGO | HERNANDEZ |
| ROSALIND | JUSTICE |
| ROBERT | KNIFFIN |
| STEVE | MASSANO (MASSARO) |
| EMERSON G. | MATTHEWS |
| ORLANDO O. | RIVERA |
| LEONARD C. | SCOTT |
| CLIFTON B. | SMITH JR. |
| FRANCES | SNEED |
| JOHN | UNDERWOOD |
| DELMETRIA | WILLIAMS |
| GLENDA | ARRIAGA |
| RICHARD | BILLINGSLEY |
| TREY | GILLESPIE |
| TERRY | LEE |
| FERNANDO L. | MOLINA |
| JOSIE | PEREZ |
| DANIEL | MARCIEL |
| WALTER | LAND |
| GEORGE | KARP |
| JACINTO H. | MELENDREZ JR. |
| JOE (EUSEBIO) | ALVARADO |

| First Name | Last Name |
| --- | --- |
| PETE | ALVARADO JR. |
| ROLAND A. | BARBER |
| RICHARD | CARNICLE |
| WILLIAM | FAGAN |
| CATHERINE | FEENEY |
| JORGE | GONZALEZ |
| GREGORY | GUERRA |
| SUSANA | MARTINEZ |
| CHERIE M. | PAWLIK |
| REYES | RODRIGUEZ |
| RICKEY | WRIGHT |
| BRITTANY R. | YOCUM |
| STEPHEN | BENNETT |
| MARY JANE | CORTES |
| DEBORAH | DAVIS |
| JERALD R. | HOWE |
| SAMMY | LANGFORD |
| LAWRENCE | PROSSER |
| WILFRED M. | BURNS |
| GARY L. | HARGIS |
| TIANNA L. | JOHNSON |
| ALBERT | VASQUEZ |
| TONUA | URTADO |
| ROBERT | BORRELL |
| MICHAEL | CLARK |
| GREGORY | MCDANIEL |
| GILBERT | MENDOZA |
| RICHARD W. | NABORS |
| MICHAEL S. | NEWMAN |
| CARLOS | NIEVES |
| JULIO | SANTOS JR. |
| TROY | STROWD |
| EDWARD | VILLEGAS |
| GERALD | WASHINGTON |
| WAYNE | DONG |
| GLENN | SAVEN (GAVEN) |
| ABRAHAM | CLARK |
| KENDRIC | CHESTER |
| CEDRIC | ALEXANDER |

| | |
|---|---|
| TROY | BUCKNER |
| ANDREA | CLARK |
| JAMES | ORTEGO |
| DON | ALEXANDER |
| NEKOL | THOMAS |
| RONALD A. | BAILEY |
| TRACY | LEE |
| ELBERT | WOODS |
| DELIA | GOVEA |
| TWOLA | NEALY |
| SALLY (LAVERNE) | YANCEY |
| EDGARDO | DEL ROSARIO |
| STANLEY P. | ETIENNE |
| PABLO H. | TAROG JR. |
| ELIZABETH | TEGENKAMP |
| HELEN G. | VEGAS |
| DRUSILLA LITE | VELASGUEZ |
| DENISE M. | WASHINGTON |
| REY RENATO A. | MATTHEWS |
| SANDRA | McENGE |
| RICHARD | FONTENBERRY JR |
| LINDA J. | DURHAM-GARRY |
| LAMARR | GOOD |
| JERRY L. | GREY |
| DANIEL T. | GUIEB |
| JAMILA | WILSON |
| JOSE | PHILLIPS |
| B.A. | PRICE |
| CURTIS | ALFORD |
| MARJORIE | HOLMES |
| TERRY L. | IVIE |
| ALVIN | JERWIGAN |
| LATECIA | JOHNSON |
| FRANCES | CALLAHAN |
| JAMIE | CAOILE |
| ROBERT | CARTER |

| | |
|---|---|
| CARL | BARNES |
| LINDA | BEAUCHAINE |
| HUNTER J. | BLAINE |
| VIRGINIA | BOONE |
| EDWARD | BORKOWSKI |
| JACOB | BROOKS |
| STEPHEN | PATTON |
| TED S. | BALLESTEROS |
| ROBERTO | ICAZA |
| ANTHONY | INGRAM |
| TRACY | LEE |
| ROXANNE | KINNEY |
| TAMMIE | BAKER |
| BEVERLY | BURKE |
| SAUNDRA | WHITE |
| CARL C. | ROWSA (RAUSA) |
| MICHELLE RENEE | ALEXANDER |
| TENISHA | JOSEPH |
| KEITH | WARD JR |
| SHARON | THOMAS |
| STEVE | HUTCHERSON |
| EUGENE | ANDERSON |
| BABE | CARLER (CARTER) |
| DOLORES | HOOK |
| IYRON L. | DAVIS |
| JOSEPH | NESBIT JR. |
| GILBERT | ROQUE |
| GREGORY W. | JONES |
| LaSHONDA | HENDERSON |
| JAY L. | BYRNE |
| HARRY | DODD |
| MELISSA A. | ROBEY |
| GERALD | OLTMAN |
| CRUZ | CONTRERAS |
| NEAL | GOVEIA |
| MARIE | SNEED |
| JOEY | JOHNSON |
| ZOTTON | BOUIE |

| ANDRE | SMITH |
|---|---|
| CHANTILE | LEWIS |

Exhibit B



# FIRM RESUME

The Tidrick Law Firm concentrates its practice in class action litigation.  Founded in 2008, the firm has represented numerous clients across the United States in employment, wage and hour, and consumer class actions.  The firm's partners are experienced in all aspects of class action practice.  The firm's attorneys have also represented individual and institutional clients in a wide range of other matters including defamation litigation, civil rights litigation, personal injury litigation, commercial litigation, real estate litigation, antitrust litigation, securities litigation, intellectual property litigation, insurance litigation, elections disputes, and government investigations.  The firm continually seeks to apply its experience as plaintiffs' attorneys with trial and appellate experience to manage and resolve civil litigation effectively on behalf of all the firm's clients.

**Steven G. Tidrick** is the firm's managing partner.  He has extensive experience in representing a diverse range of clients, both individuals and corporations, in cases ranging from relatively small employment and consumer claims to claims up to $1 billion.  Before founding The Tidrick Law Firm, Mr. Tidrick was a partner with Girard Gibbs LLP, a national litigation firm practicing in the areas of class actions and complex business litigation.  Previously he was a senior associate with Boies Schiller & Flexner LLP, one of the nation's premier law firms representing clients in some of the highest profile disputes in the world.  He has more than seven years of experience litigating class actions on behalf of both plaintiffs and defendants.

Mr. Tidrick graduated from Harvard College, *magna cum laude*, Phi Beta Kappa, and Harvard Law School, where he was an editor of the Harvard Law Review.  After law school, he clerked for Judge M. Margaret McKeown, U.S. Court of Appeals for the Ninth Circuit.

Mr. Tidrick is a member of the California Employment Lawyers Association, the Consumer Attorneys Association of Los Angeles, and the Labor and Employment Section of the State Bar of California. He previously served as vice president of the board of directors of the California Bar Foundation, a nonprofit organization affiliated with the State Bar of California.

Mr. Tidrick served during the Clinton Administration on the "reinventing government" project. He later wrote a cover story for The New Republic titled "The Budget Inferno," which was republished in *The New Republic Guide to the Issues: the '96 Campaign* (Basic Books,

1996).  Mr. Tidrick served as Chair of the Oakland Library Advisory Commission and served on the Oakland & Berkeley Mayors' Task Force on Emergency Preparedness and Community Restoration.  He was President of the Alameda County Democratic Lawyers Club from 2005 through 2007.  He has moderated candidate forums and debates in local and statewide elections, including the first televised debate among the candidates for Mayor of Oakland in 2006.  In 2008, he was elected by voters in California's Ninth Congressional District to be a delegate to the Democratic National Convention. He has directed teams of attorneys in voter protection efforts in several elections.  He is admitted to the state bars of California and Massachusetts, the U.S. Court of Appeals for the First and Ninth Circuits, and in various federal district courts.

**Joel B. Young** is a Partner with the firm. He focuses his practice on employment law and complex class and collective actions that advance the public interest.  Currently, Mr. Young represents employees in a broad range of claims, including wage and hour, discrimination, wrongful termination, sexual harassment, and racial harassment cases.  Before joining the firm, Mr. Young was associated with Gunderson Dettmer LLP and Reed Smith LLP.

Mr. Young received both his bachelors and law degrees from the University of California, Berkeley. As an undergraduate, Mr. Young was a member of the Dean's Honors List and a four-year letterman in football.  At Boalt Hall he received honors awarded in accounting and finance.  Mr. Young is a member of the board of directors of the Alameda County Democratic Lawyers Club.  He is also a member and former officer of the Charles Houston Bar Association.  He is admitted to the state bar of California and in various federal courts.

**Andrew Lee Younkins** is Of Counsel to the firm.  Mr. Younkins is a litigator and trial lawyer with appellate experience who has practiced in the areas of employment law, defamation and Anti-SLAPP law, real estate law, commercial disputes, and class action litigation. Mr. Younkins previously served in the Office of the Staff Attorney of the U.S. Court of Appeals for the Ninth Circuit and was an associate of The Shah Peerally Law Group.  Mr. Younkins graduated from Hampshire College and the University of San Francisco School of Law, where he served on the USF Law Review, the Moot Court Board, and graduated *cum laude*. His awards include the ABA/BNA Award for Excellence in Employment Law and the CALI Award for Excellence in Employment Law.  His publications include *Judicial Review of Interest Arbitration Awards under the Employee Free Choice Act*, 43 U.S.F. L. Rev. 447 (2009).  Mr. Younkins is admitted to the state bar of California and in various federal courts.

**Nicole E. Forde** is an Associate with the firm. She received her bachelors degree from the University of California, Los Angeles. She received her law degree from the University of California, Hastings College of Law. Her practice focuses on representing plaintiffs in class actions and employment litigation.  She is admitted to the state bar of California.